# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL MAYO | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 18-CV-4390 |
| | : | |
| CORRECTIONS EMERGENCY | : | |
| RESPONSE TEAM (CERT), *et al.*, | : | |
|     Defendants. | : | |

## MEMORANDUM

**SCHMEHL, J.  /s/ JLS**                                                                     **DECEMBER 12, 2018**

Plaintiff Michael Mayo, a prisoner currently incarcerated at SCI Phoenix, brings this *pro se* civil action pursuant to 42 U.S.C. § 1983, against the Corrections Emergency Response Team ("CERT"), Secretary John Wetzel, Superintendent Tammy Ferguson, and John/Jane Doe Defendants. He alleges that his constitutional rights were violated in connection with the loss of property during a transfer from SCI Graterford to SCI Phoenix. Mayo has filed a Motion for Leave to Proceed *In Forma Pauperis*. (ECF No. 4.) For the following reasons, the Court will grant Mayo leave to proceed *in forma pauperis* and dismiss his Complaint with leave to amend.

**I.     FACTS**

Mayo's claims stem from the Pennsylvania Department of Corrections' movement of prisoners from the now defunct SCI Graterford to the newly constructed SCI Phoenix in July of 2018. According to the Complaint, CERT is a team of prison staff that, under the direction of Wetzel and Ferguson, moved the legal and personal property of inmates from SCI Graterford to SCI Phoenix between July 12-15, 2018. Mayo alleges that during this period,

> CERT intentionally, unlawfully, hatefully and criminally discarded all legal materials and paperwork; stole wedding bands/rings, necklaces/chains, watches, sneakers, art work, art supplies and other valuable items; broke and placed items such as television remotes in Vaseline and did all sorts of other improper, unlawful,

1

>hateful and criminal acts to Plaintiff/Graterford Prisoners' legal and personal property, such as drew/wrote nazi signs, nigger and penises on the photos of dead and live relatives and friends.

(Compl. at 6-7.)[1]

Mayo alleges that after being transferred to SCI Phoenix and receiving his property, h found that he was missing a photo album "containing unreplaceable photos and obituaries of his deceased grandmother, family members and friends; two (2) closed cases of bottled water; a pair of Nike sneakers, a pair of sweat pants and sweat shirt; a large comb; $60 worth of commissary items; and two (2) bottles of Pomegranate Lemonade." (*Id.* at 7.) He filed a grievance seeking $25,000.00 in damages. (*Id.*) Mayo also states that "[t]housands of Graterford Prisoners filed grievances reporting their missing and destroyed legal materials, paperwork, and personal property by CERT." (*Id.*) He alleges that Ferguson then suspended the grievance process "as a means of covering up the acts of CERT with Wetzel and Doe(s)." (*Id.*)

On August 17, 2018, Mayo "was called to a scheduled Reimbursement/Property Settlement Agreement and offered $40 for only his acknowledged missing $60 worth of commissary items taken by CERT." (*Id.*) He refused the offer and "refused to sign the Request for Reimbursement/Property Settlement Agreement: Institutional Release From Future Claims that did not list all items intentionally destroyed and/or discarded by the CERT." (*Id.* at 8.) Mayo claims that the settlement payouts issued were "unlawfully taken by Ferguson from the monies assigned to activities for programs and services for Plaintiffs/Prisoners for the year." (*Id.*) On September 20, 2018, Mayo received an initial response to his grievance. (*Id.*) The response upheld it in part, granting him $114.34. (*Id.*) Mayo claims, however, that "the $114.34 failed to list all items destroyed or discarded by CERT." (*Id.*)

---

[1] The Court adopts the pagination assigned to the Complaint by the CM/ECF docketing system.

Based on the above allegations, Mayo filed the instant civil action, alleging that the Defendants' actions violated his rights under the First, Fourth, Eighth, Ninth, and Fourteenth Amendments. (*Id.* at 10-11.) As relief, he seeks a declaratory judgment, damages, and appointment of counsel. (*Id.*)

## II. STANDARD OF REVIEW

The Court will grant Mayo leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[2] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* As Mayo is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). For the following reasons, Mayo's Complaint fails to state a claim.

---

[2] However, as Mayo is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

### A. Lack of Standing

Some of Mayo's allegations pertain to general conduct that occurred during the transition, but which did not affect him. "[A] plaintiff must assert his or her own legal interests rather than those of a third party" to have standing to bring a claim. *See Twp. of Lyndhurst, N.J. v. Priceline.com, Inc.*, 657 F.3d 148, 154 (3d Cir. 2011) (quotations omitted)). Specifically, "[t]o have standing to bring a claim in federal court, a plaintiff must show, inter alia, that he has 'suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical.'" *Marin v. Leslie*, 337 F. App'x 217, 219 (3d Cir. 2009) (per curiam) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Brock describes how CERT defaced inmates' photographs and destroyed their legal property, but the only allegations specific to him are those concerning the loss of his clothing, photographs, comb, and food and beverages. If Mayo sought to raise claims based on harm caused to other inmates' legal or personal property on account of actions taken by CERT, he lacks standing to do so. The Court will therefore dismiss any claims based on the Defendants' conduct that did not directly affect Mayo property or cause him harm.

### B. Suspending the Grievance System

Mayo's allegations about the suspension of the grievance system also do not state a claim. "Prison inmates do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (per curiam); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (per curiam). Accordingly, although suspending the grievance system would affect the analysis regarding whether Mayo properly exhausted his claims as required by the Prison Litigation Reform Act, it does not provide an independent basis for a constitutional claim.

### C. Use of Program Funds for Settlement

Mayo alleges that funds were directed from prison programming toward settlement of inmates' claims arising from the loss or destruction of property during the transfer. Mayo does not provide any additional allegations regarding what programs were lost or how the loss of those programs harmed him, so he has not stated a claim based on this generalized allegation. Furthermore, with regard to decisions about budget and programming, "[s]ubstantial deference must be given to prison administrators' judgment." *Young v. Beard*, 284 F. App'x 958, 961 (3d Cir. 2008) (citing *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003)). The Complaint, as pled, does not suggest that prison administrators made a constitutionally impermissible budgeting or programming choice. Accordingly, the Court will dismiss this claim.

### D. First Amendment Claims

Mayo appears to suggest that he was denied access to the courts, in violation of the First Amendment. "A prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury." *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (per curiam) (quoting *Lewis*, 518 U.S. at 350). In other words, a prisoner claiming that he was denied access to the courts must allege an injury traceable to the conditions of which he complains. *Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (per curiam) (affirming dismissal of denial of access claims where plaintiff failed to tie alleged deficiencies in library to harm in underlying action). In general, an actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). "[T]he underlying cause of action, . . . is an element that must be described in the complaint." *Id*. Furthermore, the right to access the courts may be satisfied if the plaintiff has an attorney. *Diaz,* 532 F. App'x at 63 (citing *Bounds v.*

*Smith*, 430 U.S. 817, 831 (1977) and *Peterkin v. Jeffes*, 855 F.2d 1021, 1042 (3d Cir. 1988)); *see also Prater v. City of Phila.*, 542 F. App'x 135, 137 n.4 (3d Cir. 2013) (per curiam).

Here, Mayo does not allege that he himself was deprived of legal materials. Instead, he asserts that other prisoners were deprived of such materials. However, as discussed above, Mayo does not have standing to raise those claims on behalf of other prisoners. Moreover, Mayo has not stated any other basis for a First Amendment claim. Accordingly, the Court will dismiss Mayo's First Amendment claims at this time.

### E. Fourth Amendment Claims

Mayo also has not stated a claim under the Fourth Amendment. "[P]risoners have no legitimate expectation of privacy and . . . the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells." *Hudson v. Palmer*, 468 U.S. 517, 530 (1984); *Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001) ("The Supreme Court has concluded that the Fourth Amendment right to privacy, to be free from unreasonable searches, is fundamentally inconsistent with incarceration."). Accordingly, the events described by Mayo do not give rise to a Fourth Amendment claim.

### F. Eighth Amendment Claims

The loss of Mayo's property also does not provide a basis for a claim under the Eighth Amendment. Conditions of confinement violate the Eighth Amendment's prohibition on cruel and unusual punishment if they satisfy two criteria. First, the conditions "must be, objectively, sufficiently serious" such that a "prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations and internal quotation marks omitted). Second, the official responsible for the challenged conditions must exhibit a "sufficiently culpable state of mind," which "[i]n prison-conditions cases . . . is one of deliberate indifference to inmate health or safety." *Id.* While the

6

Court does not condone the intentional destruction of an inmate's property, the destruction or loss of property does not equate to a sufficiently serious deprivation that would give rise to a claim under the Eighth Amendment. *See Payne v. Duncan*, No. 3:15-CV-1010, 2017 WL 542032, at *9 (M.D. Pa. Feb. 9, 2017) ("Plaintiff's claim for destruction of property under the Eighth Amendment does not constitute a deprivation of life's necessities."), *aff'd*, 692 F. App'x 680 (3d Cir. 2017); *Dean v. Folino*, No. CIV.A. 11-525, 2011 WL 4527352, at *3 (W.D. Pa. Aug. 22, 2011) (allegations regarding destruction of property did not state Eighth Amendment claim), *report and recommendation adopted*, No. CIV.A. 11-525, 2011 WL 4502869 (W.D. Pa. Sept. 28, 2011).

### G. Ninth Amendment Claims

The Ninth Amendment states that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX. This Court is not aware of any authority that would provide a basis for a claim under the Ninth Amendment based on the destruction of an inmate's personal property. Indeed, courts have generally rejected Ninth Amendment claims raised by prisoners based on complaints about prison conditions. *Cf. Murray v. Bledsoe*, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam) ("Although there is some authority for the proposition that the Ninth Amendment is a source of fundamental rights . . . no court of which we are aware has held that the Ninth Amendment establishes a right to choose one's cellmate." (internal citation omitted)); *Parnisi v. Colorado State Hosp.*, 992 F.2d 1223 (10th Cir. 1993) (unpublished table decision) (observing that the Ninth Amendment "has never been applied to prevent the denial of medical treatment to prisoners"); *Muniz v. Goord*, No. 9:04-CV-0479, 2007 WL 2027912, at *9 (N.D.N.Y. July 11, 2007) (collecting cases). Accordingly, the Court will dismiss Mayo's Ninth Amendment claims.

### H. Fourteenth Amendment Claims

The Court understands Mayo to be pursuing a due process claim under the Fourteenth Amendment based on the loss of his property. However, there is no basis for a due process claim because Pennsylvania law provides Mayo with an adequate state remedy. *See Spencer v. Bush*, 543 F. App'x 209, 213 (3d Cir. 2013) ("'[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available.'" (quoting *Hudson v. Palmer*, 468 U.S. 517, 533 (1984))); *Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011) (per curiam) (explaining that the Pennsylvania Tort Claims Act provides an adequate remedy for a willful deprivation of property). Accordingly, Mayo has not stated a basis for a due process claim.

### IV. CONCLUSION

For the foregoing reasons, the Court will grant Mayo leave to proceed *in forma pauperis* and dismiss his Complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). In light of Mayo's *pro se* status, the Court will give him an opportunity to file an amended complaint in the event he can state a plausible basis for a constitutional claim. Because Mayo has not yet stated a plausible claim for relief, his request for an attorney, which is contained in the Complaint, is denied at this time. *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (in determining whether appointment of counsel is appropriate, the Court should first determine whether plaintiff's lawsuit has a legal basis). An appropriate Order follows.

**BY THE COURT:**

**/s/ Jeffrey L. Schmehl**
**JEFFREY L. SCHMEHL, J.**